23-6-4-2-8. Thank you so much. Mr. Ryan, you've reserved two minutes for rebuttal. Is that correct? I have. Thank you. May it please the court, my name is Joe. Let your colleague get up there. Wait a minute. May it please the court, my name is Joe Ryan. I'm a CJA lawyer assigned to represent Mr. Sokol below. And the reason we're here today is because Judge Brown single-handedly, single-handedly rejected the original recommendations of the government and the probation department, caused the pre-sentence report to be redone, and then imposed a sentence of 84 months, which was, according to my calculations, about 60% higher than originally recommended by the government. What exactly is wrong with that? I mean, isn't it, it's the judge who has to decide what the right sentence is, it's the judge who has to decide what the correct calculation of the sentencing guidelines is. The plea agreement, of course, expressly reserves all of those rights and points out that this is what the government thinks it should be, but in the end it's going to be up to the judge. So the fact that it's unilateral and that the judge, you're not arguing, you're expressly not arguing that the guidelines calculation was wrong, and you're not arguing that the sentence was substantively unreasonable. So what exactly is wrong? I am arguing that it's unreasonable because there's no reason, the judge gave no reason why he added two years to the sentence. Counsel, you didn't argue that it's unreasonable. As far as I could tell, you asked us to remand for clarification on the theory that there was an impossible appearance of bias. Sorry, no. Yeah, that there's this concern, right, that there's an impossible appearance of bias. Someone looking at the record would wonder why Judge Brown was causing this enhancement. That's, but that's how I read your brief. That was, and I did not read it as saying there was an actual error in the sentence. Are you now arguing that the sentence was substantively unreasonable? The answer is yes. Okay, even though it was below the guidelines and below the guidance. Yes, below the guidelines, that's correct. So the district court had another option here. So when probation came to the court, submitted the PSR with a calculation that missed as, frankly, cross-references are hard, right? It's not the first cross-reference case I've seen. They're really hard. I've sat as a district judge across the desk with a copy of the guidelines for a long time trying to figure it out. So they're hard, and probation missed the cross-reference. And so would it have been preferable for the district court to wait until the day of sentencing and say, I think this calculation is wrong? I guess I'm not, you sound like it was error for the district judge to point this missing cross-reference out to probation, thereby giving notice to the parties and an opportunity to argue. But at trial, or at the trial court, there was no argument that that cross-reference was wrong. Yes, there was. In my sentencing memorandum to the judge, under seal, I argued that it was wrong to apply this enhancement because there was no relationship between Mr. Sokol and this defendant who was charged with conspiracy to murder, Jimmy Dean. And the probation department said he had no involvement with Jimmy Dean or this gang. So this enhancement was wrong, and I argued that in a written submission. Did you argue that in your brief to us? Yes, yes. Where? Yes. Tell me where in the brief you have an argument that says the enhancement was incorrectly applied. The enhancement was incorrectly applied according to the submission I made to Judge Brown. Where in your brief to us did you argue that the sentence is procedurally unreasonable because the sentencing enhancement was incorrectly applied? I'm sure it's in the brief somewhere, Judge. I don't understand why this impression is created, because we submitted to Judge Brown. There's a good point in the argument. Yes. It's only three pages long. Yes. The argument is titled, the remand is required to avoid the appearance of bias at sentencing. That's correct. There is no argument that I detected, and I'm giving you the opportunity to tell me that I missed it and that it's in there, that is to the effect that the sentencing guidelines were incorrectly calculated by the judge. The grounds for the calculation were wrong. I argued that to Judge Brown, but when it came to the day of sentencing, Judge, I had to make a choice. I'm not asking about what happened in the district. I'm asking, did you argue this to us? It's a simple question. Is there something in your brief that tells us that the calculation was wrong? Even if I didn't argue it, Judge Brown gave no reason, which is the reason that this appellate review takes place. Was it the reason that was expressed in the first instance was that the judge thought that the probation department had the calculation wrong? Correct. That was the reason for revisiting it. Yes. The probation department revisited and said, yes, you're right, we were wrong, and gave a new calculation. And then I filed a sentencing memorandum which said that that was wrong, and the probation department was wrong, because Mr. Sokol had no connection whatever with this Jimmy Dean case. He wasn't part of their gang. He wasn't part of any murder. In fact, the only reason he made these threats was out of a misguided relationship he had with his dean sister, a romantic relationship. And I thought we emphasized that in the brief. In other words, he had a romantic relationship. He was an unstable person. He made these threats without any purpose involving Jimmy Dean or the gang. He had no relationship, and probation department admits that. They say- Excuse me, I see where you made the argument below. It is point one of your sentencing memorandum. Yes. That the enhancement was improper. Correct. But I did not see, and I still do not see, that you repeated that argument to us before- Well, I apologize. I apologize for that. Can you do some reaction on the mental health treatment? Sure. Where's the status of that? Has there been any movement on that at all? On what? On the mental health treatment. No, he's in the prison system. He's completed 63 months, which would have satisfied the 57 months was the government's recommendation. And he's going to be in there for another two years. He won't be out until he's 36 years of age. So what we're asking you to do is remand it to Judge Brown, have him reconsider the sentence, because the mechanism that this court has to determine whether a judge gave a reasonable sentence is to find a reason. Now, there's nothing in this record that says there's a reason why this defendant should have been docked with two additional years beyond what the probation department and the government originally recommended. And the government didn't back down on that. They stayed the bike despite this invitation by the district court Judge Brown. They said we're sticking with 57 months. We think that satisfies everything. Now, the judge is not technically bound by that. He's not technically bound. The judge is not bound, period. It's the judge's responsibility to impose the sentence, not the government's. The government can make recommendations. The government is sometimes unduly strict and sometimes unduly lenient in the view of the judge in charge of the case. I don't see what's special about this. In this case, it was a reasonable. The only reason the probation department acceded to the judge's request to increase this enhancement was because they put this murder in of Thomas Cosella, his name is. He was murdered. He got 39 bullets in his car when he was sitting there, and that was caused by Dean. Sokol had nothing to do with that. But the probation department put that in there as a justification to accede to the judge's request that you have to use this enhancement. Now, the guidelines are strictly guidelines. They're advisory. And in their discretion, the judge— Can I go back to Judge Perez's question? Yes. I'm not sure it got answered. With respect to the recommendation of mental health treatment, first of all, you agree, don't you, that the mental health treatment is a condition of supervised release? Yes. Under the judgment.  So what we're talking about now is exclusively about what's happening in the prisons. Yes. Okay. Does the judge have any authority to require that the prisoner be given mental health treatment? No. He can recommend— Does the judge have any authority to require that the defendant be assigned to a prison where a mental health treatment program is available? The judge can only recommend it. So the judge did not recommend that placement? He did not. Okay. Do we know where Mr. Sokol is? Yes. He's assigned to a prison in West Virginia, but right now he's in transit to Suffolk County to clear up this open case in the District Court of Suffolk County. He's got a concurrent sentence on a plea disposition. So he's got some kind of state sentence as well, because he's showing up as not in BOP custody. Yes, because he's being transported to Suffolk County to clean up this possession of cocaine case that's been pending out there. Thank you very much, Judge. Thank you. Ms. Matthews? Good morning. Thank you, Your Honor. And may it please the Court. My name is Kate Matthews, and I represent the United States on this appeal. Your Honors, the defendant's request for remand on the basis of judicial bias, as was teed up in his brief, is unwarranted, and the District Court's judgment should be affirmed in all respects. As an initial matter, at no point did the defendant argue below that the District Court might be biased or that it should recuse itself. And nothing that the defendant points to on appeal, nor anything else in the record, suggests that the court was biased in imposing its below-guideline sentence, which was, in fact, 37 months below the low end of the defendant's guideline. Isn't that kind of a bit circular? He's arguing that the guideline should not have changed, right? That there's no basis for that guideline sentence, so the fact that it's below doesn't really answer all of the questions because it's below the new one, right? So I think what you need to do is argue why it was appropriate. The second, bigger, or more extensive supervision is the more appropriate guideline sentence. Understood, Your Honor. I think I'm trying to focus on what I read the brief to be, which was raising this issue of bias. And so I struggle to see where there's any indication of bias here.  I mean, it may be – I was going to ask a similar question but preface it by saying it may be unfair to you in the sense that all you say – I mean, you have a very short one page or so at the end of the brief saying the sentence was procedurally and substantively reasonable. Perhaps understandably, you did not make a specific argument about the applicability of the enhancement since the appellant's brief did not make any argument that it was inapplicable. So it's taking you a little bit by surprise, but recognizing that, as you stand here today, do you have an argument about – Mr. Ryan's argument is that the enhancement was not appropriately applied because there was no evidence that Mr. Sokol was in cahoots with Dean in this assassination of somebody. I didn't even see anything about the assassination of somebody. I thought the whole deal was that he was – the enhancement applied because he was trying to influence the – or obstruct the prosecution of Mr. Dean, whether of his own motive or in cahoots or otherwise. Do you happen to know, as you stand there now, or have anything you can point us to, as to whether the enhancement requires that kind of acting in concert or whether the enhancement applies wherever the activity, the threats, were in an effort to obstruct a prosecution? Your Honor, I think the plain language of the – what you're calling an enhancement, which is the cross-reference of Section 2J1.2c, is pretty clear. It says if the offense here, which was obstructing a criminal proceeding or witness tampering, if the offense involved obstructing the investigation or prosecution of a criminal offense, then you apply the accessory after the fact enhancement. And so there's no sort of language there requiring that someone be in cahoots. And you would say as a factual matter there is no question that Mr. Sokol – at least that the district court could reasonably have found as a fact that Mr. Sokol was intending to obstruct the prosecution of Mr. Dean because all of these – well, not all of them, but certainly the driving past the cooperator's house saying that he was a snitch, the message at least to the judge's chambers that suggested that they should be very careful to try and keep this witness alive because he, Mr. Sokol, who admittedly seems a little nuts because he gives his name, was going to kill him and eat him if he testified against Mr. Dean. So you would say therefore there's a reasonable underlying fact finding that this was intended to obstruct and all that's necessary under the guideline is an intent to obstruct. Do I have that right? I think you do, Your Honor. And I would also point out that Mr. Sokol's supplemental sentence in memorandum where he raised various arguments about the application of this cross-reference, he actually conceded that it was essentially applicable. He said, although the court's view that it applies is well-founded under case law, that the court should exercise its discretion in not applying the cross-reference. And so I don't think that Mr. Sokol in fact argued in the memo that he referenced earlier that it didn't apply. He just said, Your Honor, I understand why it applies, but here's why you should exercise your discretion and not apply it. And that was his position at the hearing as well, right? He says, the court asks him, do you want to comment on the guidelines? And he says, I want to make an argument as to what Your Honor should consider for not following those guidelines. So in terms of that being the right guidelines calculation, I think it's correct. The court asks, and Mr. Ryan says, I'm not disputing the guidelines calculations. I want to persuade Your Honor to exercise discretion. So that transcript is consistent with the written submission as well. Exactly, Your Honor, they are consistent. Unless Your Honors have any further questions for me, I will rest on our papers. Thank you. Thank you. We've got two minutes, Mr. Ryan. As a defense lawyer, it's pretty clear that arguing before Judge Brown whether this enhancement is appropriate was not the course to take at that time because he had already announced what the calculation was. He instigated the whole process. And the probation department endorsed his process. But that doesn't mean that we acceded to the grounds for which the enhancement was applied. The argument I had to make was based upon his childhood history, the overwhelming evidence of his mental instability. I clearly did a message with Judge Sibert. He was a nut. Gives his names, his Omelette and Kings. He was an unstable person at 1.17 a.m. And I was trying to convince Judge Brown that he needs help. He doesn't need two more years of sentencing because of this so-called enhancement. The enhancement was improper. I apologize for not spelling it out in a brief as I did before Judge Brown. But I thought that the, in my estimation as a defense lawyer for Mr. Sokol, that his mental instability and his record and track record and everything else of a person who never had a parent since he was three years old. And it was a fortunate thing that he was arrested because his lifestyle, he wouldn't be here today if he wasn't arrested. Thank God he's in the Bureau of Prison's custody right now. And the question is, why does he have to pay two more years according to Judge Brown's analysis? That's the issue. And if you look at this record and the reasons that Judge Brown gave for giving the sentence, they're the same reasons as if it was a 57-month recommendation or a 51-month. The same reasons would apply. There's no additional reason for why the additional two years should be applied. That's what we're talking about here. Okay? That's what we're talking about here. Thank you very much.